UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAN D. DOPP, | Case No. 4:13-cv-00387-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| TAYLOR'S CROSSING PUBLIC CHARTER SCHOOL, INC., | |
| Defendant. | |

## INTRODUCTION

The Court has before it Defendant Taylor's Crossing Public Charter School, Inc.'s Motion for Partial Summary Judgment (Dkt. 14). The Court heard oral argument on the motion on May 18, 2015, and now issues the following decision.

## BACKGROUND

Plaintiff Alan Dopp was employed for approximately four years by Defendant Taylor's Crossing Public Charter School, Inc. ("TCPCS") as a physical education teacher and administrator. *Compl.* ¶ 1; *Def.'s Statement of Facts*, ¶ 2, Dkt. 14-1. Dopp's employment was based upon contracts that he entered into each year, between 2007 and 2010. *Id*.

In 2010, Dopp signed two contracts for the 2010–2011 school year: a Category 3 Teacher's contract dated July 12, 2010, and an Idaho Administrator's Contract on August

11, 2010. *Dopp Dep.* 49:24–50:8, Dkt. 14-4. Prior to signing those contracts, Dopp and the rest of the faculty were informed that TCPCS was experiencing financial difficulties and that an across-the-board salary cut would be necessary. *Dopp Dep.* 72:4–72:8, Dkt. 14-4. TCPCS alleges that Dopp was also informed that as a consequence of TCPCS's financial situation, a reduction in force ("RIF") policy was necessary. *Def.'s Statement of Facts*, ¶ 3, Dkt. 14-1. According to TCPCS, the RIF policy gave the school board the authority to reduce the number of TCPCS employees if, among other reasons, TCPCS could not meet its financial obligations. *Id.* at ¶ 4. Dopp disputes that the particular RIF policy provided by TCPCS is the exact RIF policy in effect at the time his contract was not renewed, but he fails to provide the RIF policy that he alleges was in effect, or explain how that policy differs from the one proffered by TCPCS. *Pl.'s Resp.* at 8, Dkt. 19. Dopp does not dispute that a RIF policy was in place sometime between the time he signed his last contract and the time his contracts were not renewed. *Dopp Dep.* 100:5–100:11, Dkt. 14-4.

On July 6, 2011, Dopp received notice via certified mail that TCPCS would not be renewing his contracts for the 2011–2012 school year because TCPCS's "funding has been significantly reduced" by the State. *See Pl.'s Resp.* at 8, Dkt. 19; *Def.'s Ex. 5*, Dkt. 14-8.

In his Complaint, Dopp alleges generally that his contracts were not renewed because he is "older and male[,]" not because of any RIF policy in place. *Comp.* ¶ 1. Dopp puts forth six claims: (1) breach of contract; (2) breach of the covenant of good

faith and fair dealing; (3) fraud; (4) retaliation pursuant to 31 U.S.C. § 3730(h); (5) discrimination based on sex under Title VII; and (6) discrimination based on age under the Age Discrimination in Employment Act ("ADEA"). TCPCS filed the present Motion for Partial Summary Judgment asking the Court to dismiss Dopp's retaliation claim and both discrimination claims. *Def.'s Br.* at 1–2, Dkt. 14-2. TCPCS also requests that the Court decline to exercise supplemental jurisdiction over Dopp's remaining state law claims. *Id.* at 2.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case."  *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).   Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

It is well-established that only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e). It follows that the admissibility of evidence is a threshold question, which must be answered prior to determining whether a genuine issue

of material fact exists. TCPCS argues that Dopp's claims should be dismissed because he failed to submit any admissible evidence to support them. *Def.'s Reply* at 2, Dkt. 27. Before evaluating the merits of TCPCS's Motion for Partial Summary Judgment, the Court will determine whether the evidence Dopp submitted is admissible.

TCPCS points out that "the only information the Plaintiff has provided to create an issue of fact are the Exhibits he filed separate from his Response brief." *Def.'s Reply* at 3, Dkt. 27. TCPCS goes on to argue that those exhibits must not be considered by the Court because they were not submitted by sworn statement, and are "without explanation of what they are, where they came from, or who sponsored them." *Id.*

The Ninth Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (internal citations omitted). The authentication requirement is satisfied when the proponent of the item produces "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.R.Evid. 901(a). Statements in a brief are not evidence and cannot be used to create an issue of fact. *Barnes v. Independent Auto Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

In conjunction with his response brief, Dopp filed fifteen attachments, comprised of fourteen exhibits and one affidavit of counsel ("Affidavit of Counsel"). *See* Dkt. 19-1– 19-15. The Affidavit of Counsel makes no mention of the fourteen exhibits. *See Aff. Of Counsel*, Dkt. 19-15. As TCPCS alleges, it is unclear where the fourteen exhibits came

from, or what they purport to demonstrate. In a few instances, Dopp included brief synopses—within his Response Brief—of certain exhibits that allegedly "verify the issues raised by Dopp." *Pl. Resp.*, at 10, Dkt. 19. This does not satisfy the authentication requirement. Statements within a brief are not evidence, so Dopp has provided no evidence demonstrating that each exhibit is what he claims. In sum, no foundation was laid to authenticate any of the fourteen exhibits.

Next, attached to the Affidavit of Counsel is another exhibit: excerpts from Dopp's deposition ("Deposition Excerpt"). Within the Affidavit of Counsel, Dopp's counsel attests to having personal knowledge of the facts stated therein, and states that he has attached a "true and correct" copy of the Deposition Excerpt. *Aff. of Counsel*, ¶¶ 1, 3, Dkt. 19-15. The Court finds that Dopp has met the authentication requirement as to the Deposition Excerpt.

Therefore, the Deposition Excerpt is the only piece of admissible evidence put forth by Dopp in opposition to TCPCS's motion for partial summary judgment; the other fourteen exhibits are not admissible and will not be considered by the Court.

As another preliminary matter, local rule requires Dopp to "file a separate statement, not to exceed ten (10) pages, of all material facts which the responding party contends are in dispute." Dist. Idaho Loc. Civ. R. 7.1(c)(2). When a party fails to address another party's assertion of fact as required by Local Rule 7.1(c)(2), "the Court nonetheless may consider the uncontested material facts as undisputed for purposes of consideration of the motion . . . ." Dist. Idaho Loc. Civ. R. 7.1(e)(2). Here, Dopp failed to

comply with Local Rule 7.1(c)(2) because he did not submit a separate statement of material facts. As permitted by Local Rule 7.1(e)(2), the Court will treat TCPCS's version of material facts as uncontested, and thus, undisputed for purposes of considering this motion.

With the foregoing in mind, TCPCS's motion will be considered on a claim by claim basis.

### 1.    Age Discrimination Claim

The Age Discrimination and Employment Act (ADEA) prohibits employers from taking an adverse action against an employee who is at least forty years old, because of the employee's age. *See* 29 U.S.C. § § 623(a). Defendant TCPCS asserts that Dopp's claim under the ADEA must be dismissed for two reasons: (1) Dopp was only thirty-nine years old at the time his contract was not renewed and therefore does not fall within the class of individuals protected by the ADEA; and (2) Dopp failed to exhaust his available administrative remedies. *Def.'s Br.* at 3, Dkt. 14-2. Dopp concedes that he was only thirty-nine years old at the time his contract was not renewed, and agrees that his ADEA claim is subject to summary judgment. *Pl.'s Br.* at 1, Dkt. 19. Accordingly, the Court does not need to address whether Dopp failed to exhaust his administrative remedies and grants summary judgment in favor of TCPCS as to Dopp's ADEA claim.

### 2.    Retaliation Claim Under 31 U.S.C. § 3730(h)

In Count IV of his Complaint, Dopp asserts a retaliation claim under the federal False Claims Act ("FCA") pursuant to 31 U.S.C. § 3730(h), alleging that his contract was

not renewed because he disclosed his concern that TCPCS "had received public monies in trust to provide various public school services and that through mismanagement that these funds were at risk of being misused." *Compl*. ¶ 61–62.

TCPCS alleges that summary judgment should be granted in its favor as to this claim because Dopp's retaliation claim is time-barred. *Def.'s Br.* at 4, Dkt. 14-2. TCPCS asserts that a 180-day statute of limitations applies here because Congress did not provide a specific statute of limitations for a § 3730(h) retaliation claim, and that, therefore, the most closely analogous statute of limitations under state law must be applied. *Id*. TCPCS goes on to argue that a claim brought under Idaho's Whistleblower Act pursuant to Idaho Code § 6-2105(2) is the most analogous statute. *Id*. Because I.C. §6-2105(2) provides that a retaliation claim made under that provision should be brought within 180 days of the alleged adverse action, TCPCS argues, the same 180-day limitation period should apply in this instance. *Id*. Dopp points out that  31 U.S.C. §3730(h) was amended to include a specific three-year statute of limitations, but then goes on to argue that the most analogous state statute is I.C. § 5-224, which contains a four-year statute of limitations. *Pl's Resp.* at 13, Dkt. 19.

In 2005, the Supreme Court directed lower courts to "borrow" the statute of limitations governing the most analogous state statute when deciding whether a retaliation claim made pursuant to 31 U.S.C. §3730(h) is time-barred. *Graham Cnty.*, 545 U.S. 409, 417–18, 125 S.Ct. 2444, 2450–51 (2005).

However, as Dopp alluded to, Congress has since enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Act"), Pub. L. No. 111–203, 124 Stat. 1376, which amended the FCA to supply an express three-year statute of limitations for FCA-based retaliation claims. Section 3730(h) now provides that a "civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred." 31 U.S.C. § 3730(h)(3).

Notably, the Act became effective July 22, 2010. *See Townsend v. Bayer Corp.,* 774 F.3d 446, 455 (8th Cir. 2014) ("Effective July 22, 2010, Congress amended the [FCA] by adding subparagraph (3) to § 3730(h).") Dopp's cause of action accrued nearly a year later, when he was notified that his teaching contract would not be renewed.[1] The Court finds that the Act, and thus the express three-year statute of limitations, was in effect prior to the time Dopp's cause of action accrued. Therefore, a three-year statute of limitations applies here. Dopp filed his Complaint on September 4, 2013, well within three years of the alleged retaliation.

Accordingly, TCPCS's motion for partial summary judgment as to this claim is denied.

---

[1] Dopp alleges that the retaliation occurred on July 6, 2011 when he was notified by certified mail that he would not be returning to teach. *Pl's Resp.* at 9, Dkt. 19. TCPCS asserts that Dopp was notified that his contract would not be renewed on June 30, 2011. *Def's Reply*, at 4, Dkt. 27. Regardless, Dopp filed his complaint on September 4, 2013, well within three years of either date.

### 3.    Title VII Sexual Discrimination Claim

In his fifth claim for relief, Dopp alleges that TCPCS "through [its] agent, [Andrew Meyer], indicated that the true reason for termination was an improper attempt to eliminate assertive males from [TCPCS], in favor of subservient women, a violation of Dopp's civil rights." *Compl*. ¶ 67.

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). "A claim of disparate treatment requires direct or circumstantial proof of discriminatory motive." *Washington v. Garrett*, 10 F.3d 1421, 1431–32 (9th Cir. 1993). In such a case, and in order to survive summary judgment, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807, 93 S.Ct. 1817, 1826–27 (1973). If the plaintiff does so, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The plaintiff must then demonstrate that the employer's stated reason for its action is, in fact, pretext. *Id*.

When, as here, it is alleged that a RIF[2] was carried out in a discriminatory manner, the plaintiff must demonstrate "(1) that [he] belongs to a protected class; (2) that [he] was

---

[2] In addition to being subject to the RIF policy, Dopp also alleges that he was discriminated against when, at the beginning of the 2010 school year, his office was moved from the front of the building to the back, so that Angie Lords, the director of financial services, could have the office at the front of the school. *Dopp Dep.* 119:8–120:12. However, Dopp has failed to explain or demonstrate how (Continued)

discharged from a job for which [he] was qualified; and (3) that others not in [the] protected class were treated more favorably." *See Washington*, 10 F.3d at 1434. When determining whether the third element is met, courts should examine whether others not in the protected class, but who nonetheless are "comparable" to the plaintiff, were treated more favorably. *See Montana v. First Federal Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2nd Cir. 1989) ("plaintiff was required to show that she was treated less favorably than comparable male employees"); *Gathenji v. Autozoners, LLC*, 703 F.Supp.2d 1017, 1030 (Cal. Dist. 2010) (Plaintiff "presents evidence that other district managers who were not African-American or of Kenyan origin . . . were treated more favorably.") Here, elements one and two are not in dispute. As to element three, Dopp must demonstrate—with admissible evidence—that comparable women employees were treated more favorably. Looking to the only piece of admissible evidence submitted by Dopp, the Deposition Excerpt, it becomes apparent that Dopp has failed to satisfy his *prima facie* case.

Dopp alleges that he was discriminated against because "[a]ll of the men were fired or eliminated at the end of the year, except for one, and he was promoted." *Dopp Dep.* 120:15–120:16, Dkt. 19-15. Dopp explains that "they eliminated all the men at one

---

this action constitutes an unlawful employment practice prohibited under Title VII. *See* 42 U.S.C. § 2000e-2(a). Likewise, he has not shown that his office was moved "because of . . . [his] sex." *Id*.

time and no women. And replaced all of those men with younger, less experienced and female teachers." *Id*. at 121:5–121:6. Finally, Dopp states that certain women were unfairly promoted. As examples, he lists Theresa Adelizzi, who started out as an assistant cook, Jamie Toop, a secretary, and Malia Kunde, a part-time science teacher. *Id*. at p. 122–25.

The statement that all of the men were eliminated at one time, and none of the women, is meaningless without more information. Dopp does not explain how many people were let go as a result of the RIF, those individuals' positions and qualifications, or, of that number, how many were men versus women. It is possible that at the time Dopp's contract was not renewed, all of the full-time teachers with similar qualifications as Dopp were men. The point is, there is insufficient evidence in the record to know one way or the other. Dopp's allegation that certain women—an assistant cook, a secretary, and a part-time teacher—were kept on and eventually promoted also misses the point. Dopp must demonstrate that he personally was treated less favorably than comparable women employees. Dopp admits, however, that the women employees he refers to above were "less experienced" and had "less [of] a position." *Dopp Dep.* 121: 22–121:23. In short, Dopp has provided no admissible evidence that a comparable woman employee was allowed to retain her position while he was not. Accordingly, Dopp has failed to satisfy his *prima facie* case, and summary judgment is granted in favor of TCPCS as to this claim.

### 4.    Dopp's State Law Claims

TCPCS also asks the Court to decline to exercise supplemental jurisdiction over the state law claims and remand the same to Idaho state court. Because Dopp's FCA claim still remains, the Court will retain jurisdiction over Dopp's state law claims as well. *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001) (reviewing for abuse of discretion a district court's decision whether to retain jurisdiction over state claims when original federal claims are dismissed).

## ORDER

**THEREFORE, IT IS HEREBY ORDERED:**

1.      Plaintiff's Motion for Partial Summary Judgment (Dkt. 14) is **GRANTED IN PART AND DENIED IN PART.** The Motion is Granted as to Counts 5 and 6 of the Plaintiff's complaint, and those Counts are dismissed. The Motion is Denied as to Count 4 of the Plaintiff's complaint.

DATED: June 9, 2015

B. Lynn Winmill
Chief Judge
United States District Court